Lynda Sangmor (Pro Hac Vice)
**LENTO LAW GROUP, P.C.**
Phoenix Corporate Tower
3003 N Central Avenue, Suite 685
Phoenix, AZ 85012
Telephone: (480) 745-5863
Facsimile: (856) 375-1010
Email: lynda.sangmor@llgnational.com

Gregory P. Goonan (Cal Bar # 119821)
**THE AFFINITY LAW GROUP®**
5230 Carroll Canyon Road, Suite 230
San Diego, CA 92121
Telephone: (858) 412-4296
Facsimile: (619) 243-0088
Email: ggoonan@affinity-law.com

Attorneys for Plaintiffs Justin Killen and
Mercedes Killen individually and as parents
and guardians of J.K., a minor.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JUSTIN KILLEN and MERCEDES KILLEN, individually and as parents and guardians of J.K., a minor,<br><br>*Plaintiffs*,<br><br>vs.<br><br>MONROVIA HIGH SCHOOL, MONROVIA UNIFIED SCHOOL DISTRICT, JEFF LEE, ADRIAN AYALA, and DOES 1 through 10, inclusive,<br><br>*Defendants*. | Case No. 2:25-cv-06829-FMO (ASx)<br><br>Hon. Fernando M. Olguin<br><br>**PLAINTIFFS' FIRST AMENDED COMPLAINT AND JURY DEMAND** |

**COMES NOW** Plaintiff J.K., by and through his duly-appointed Guardian ad Litem, and

Plaintiffs JUSTIN KILLEN and MERCEDES KILLEN, by and through their attorneys, Lento

Law Group, P.C., and bring this civil rights and state-law action against Defendants MONROVIA

PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND - 1

UNIFIED SCHOOL DISTRICT, JEFF LEE, ADRIAN AYALA, and DOES 1–10, in their individual and official capacities, alleging as follows:

## **INTRODUCTION**

1.    This action arises from a pattern of retaliation, selective enforcement, and deliberate indifference within the Monrovia High School boys' water polo program and the Monrovia Unified School District's administrative structure. After J.K.'s parents raised concerns regarding unsafe coaching practices, discriminatory treatment, violations of established school policies, and the creation of a hostile team environment, Defendants engaged in retaliatory conduct directed at J.K., including demotion, exclusion from team communications, removal from leadership opportunities, disparate treatment compared to similarly situated athletes, and the creation of conditions intended to chill further protected speech.

2.    These actions were undertaken under color of state law and violated J.K.'s rights under the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and 42 U.S.C. § 1983. Defendants' conduct was not isolated. It reflected a broader custom, practice, and pattern of arbitrary favoritism, suppression of complaints, and administrative inaction, amounting to a District-wide policy or ratified practice sufficient to establish municipal liability under Monell. Despite repeated notice of misconduct and safety concerns, District officials failed to investigate, intervene, or enforce required supervision and complaint-handling protocols, thereby ratifying Coach Lee's conduct and contributing to the constitutional injuries suffered by J.K.

3.    In addition to federal claims, Plaintiffs seek relief under the California Constitution, California Education Code, and California tort law, including negligence, negligent supervision, and intentional infliction of emotional distress, for harms arising from Defendants'

PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND - 2

failure to provide a safe, nondiscriminatory educational environment. Plaintiffs have complied with all requirements of the California Government Claims Act.

## JURISDICTION AND VENUE

4.      This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983, the First Amendment, and the Equal Protection Clause of the Fourteenth Amendment. Accordingly, this Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)–(4).

5.      This Court has supplemental jurisdiction over Plaintiffs' related state-law claims, including claims under the California Constitution and California tort law, pursuant to 28 U.S.C. § 1367(a), because those claims arise from the same case or controversy as the federal claims.

6.      Venue is proper in the Central District of California under 28 U.S.C. § 1391(b) because all events, omissions, and injuries giving rise to this action occurred within this District, and all Defendants reside or are employed within this District.

## PARTIES

7.      Plaintiff J.K. is a student formerly enrolled at Monrovia High School. J.K. was a minor at the time of the events described herein and appears in this action by and through his duly-appointed Guardian ad Litem, pursuant to Federal Rule of Civil Procedure 17(c).

8.      Plaintiffs JUSTIN KILLEN and MERCEDES KILLEN are J.K.'s parents. They bring claims arising from retaliation directed at their protected speech and advocacy on behalf of their son.

9.      Defendant MONROVIA UNIFIED SCHOOL DISTRICT ("MUSD") is a public school district organized under the laws of the State of California and is responsible for the

PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND - 3

policies, practices, supervision, training, and conduct of Monrovia High School and its employees. MUSD is a "person" subject to suit under 42 U.S.C. § 1983.

10. Defendant JEFF LEE is employed by MUSD as the head coach of the Monrovia High School boys' water polo team. He acted under color of state law at all relevant times.

11. Defendant ADRIAN AYALA is the principal of Monrovia High School and acted under color of state law at all relevant times.

12. Defendants DOES 1–10 are individuals whose identities are currently unknown but who participated in, directed, ratified, or failed to prevent the violations alleged herein. Plaintiffs will amend this Complaint to identify these defendants when their identities become known.

## FACTUAL BACKGROUND

13. Plaintiff J.K. began playing water polo at Monrovia High School during his freshman year and demonstrated consistent dedication, skill, and leadership. He advanced from junior varsity ("JV") to varsity based on merit and served in informal leadership roles during his sophomore year. His coaches and teammates recognized him as reliable, hardworking, and committed to the program.

14. At the start of J.K.'s junior year, Defendant Jeff Lee was appointed head coach of the boys' water polo team. Following his appointment, J.K. experienced abrupt and unexplained changes in team placement and treatment. Despite his prior varsity status and leadership experience, Defendant Lee demoted J.K. to JV without explanation, while still requiring him to participate in varsity matches. J.K. was denied recognition, leadership opportunities, and the benefits associated with varsity status.

PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND - 4

15. Defendant Lee imposed mandatory purchases of uniforms and apparel through specific vendors, including an $87 polo shirt, with the implication that athletes who did not comply would not play. These requirements were not approved through any transparent process and placed unnecessary financial burdens on families. The Killen family purchased the required items to avoid retaliatory treatment.

16. Defendant Lee also closed practices to parents, canceled the fall pre-season parent meeting, and publicly stated, while in the presence of school administrators, that he would not communicate with parents. Principal Ayala confirmed that parents would not be permitted to contact Coach Lee directly and must instead route all communication through him. This refusal to engage with parents created a culture of opacity and undermined accountability.

17. Defendant Lee transported students, including minors, without required supervision or school authorization, and was observed in the pool with students without a lifeguard present. These actions violated safety protocols set forth in the District's Annual Parent Information & Notifications Handbook, which requires adherence to the Comprehensive School Safety Plan, Duty Concerning Conduct of Students, Transportation/Passenger Safety, Student Safety, and Mental Health policies. Despite these violations, no corrective action was taken.

18. Upon information and belief, Defendant Lee routinely transported student-athletes in his personal vehicle without obtaining required District authorization or ensuring the presence of a second adult supervisor, in violation of District transportation and passenger-safety protocols.

19. On multiple occasions, Defendant Lee entered the pool with students without a lifeguard present, contrary to the District's Comprehensive School Safety Plan and established aquatic-safety standards. These violations were reported to school administrators, yet no

PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND - 5

investigation was initiated and no corrective action was taken, further demonstrating the District's failure to enforce mandatory safety policies and its deliberate indifference to student welfare.

20.    J.K.'s father, Plaintiff Justin Killen, submitted multiple complaints to school officials, including Principal Ayala, regarding unsafe conditions, discriminatory treatment, and retaliatory conduct. Despite receiving actual notice, school administrators failed to investigate or intervene, allowing the misconduct to continue.

21.    This failure violated District policies requiring investigation of complaints, including the Uniform Complaint Procedure, Supplemental Williams Complaint Procedure, and Duty Concerning Conduct of Students.

22.    Despite receiving multiple complaints from Plaintiff Justin Killen, including written and verbal reports detailing safety concerns, discriminatory treatment, and retaliatory conduct, Principal Ayala failed to initiate any investigation, failed to interview witnesses, and failed to enforce mandatory complaint-handling procedures.

23.    Upon information and belief, other administrators, including the Athletic Directors and District-level officials, were also made aware of concerns regarding Defendant Lee's conduct but similarly failed to intervene.

24.    Following these complaints, J.K. experienced retaliatory actions, including:

    a.    marginalization from team activities,

    b.    removal from team communications,

    c.    exclusion from team events,

    d.    disparate treatment compared to similarly situated athletes, and

    e.    denial of leadership opportunities he had previously earned.

PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND - 6

25.     These retaliatory actions occurred shortly after protected speech by J.K.'s parents, demonstrating a causal connection between the complaints and the adverse treatment.

26.     The timing of these retaliatory actions closely followed Plaintiff Justin Killen's protected complaints. Within days of raising concerns, J.K. was removed from team communications, excluded from team events, and stripped of leadership opportunities he had previously earned. The proximity between the protected speech and the adverse actions supports a strong inference of retaliatory motive.

27.     Other athletes experienced similar targeting and exclusion, demonstrating a broader pattern of arbitrary favoritism and retaliation within the program. For example, Ulysses Aguila, a senior and former JV captain recognized as Athlete of the Month and MVP, was repeatedly demoted without explanation, excluded from recognition, and subjected to intimidation by favored players. His mother, Martha Aguila, submitted a detailed written complaint to the Monrovia School Board documenting:

      a.   favoritism in captain selection,

      b.   undue parental influence over Defendant Lee,

      c.   exclusion of parents from team activities,

      d.   intimidation and fear of retaliation among players,

      e.   removal of student recognitions from team social media,

      f.   inconsistent and unexplained team placements,

      g.   lack of communication from Defendant Lee,

      h.   closed practices announced by Principal Ayala,

      i.   mandatory expensive apparel,

      j.   emotional distress and mental health concerns,

PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND - 7

        k.   forfeiture of games due to mismanagement, and

        l.   administrative indifference despite repeated notice.

28.     These allegations corroborate J.K.'s experiences and demonstrate a pattern of misconduct, notice to the District, and ratification by administrators, including Principal Ayala and other District officials.

29.     In the parent group chat, when Plaintiff Justin Killen asked why prior student recognitions had been removed from the team's social media page, parent Sarah Edgington immediately responded and attempted to justify the removal without providing any explanation for why only her son's recognition remained. This incident further demonstrated the lack of transparency, the undue influence certain parents exercised over team operations, and the exclusion of other parents from meaningful participation.

30.     Upon information and belief, additional players experienced similar treatment, including unexplained demotions, exclusion from recognition, and intimidation by favored athletes. Several players expressed fear of retaliation if they or their parents raised concerns, demonstrating that the hostile environment was widely known and tolerated by school administrators.

31.     Upon information and belief, retaliation and hostility continued even after J.K. left the team. J.K. was subjected to disparaging comments by teammates during class time, including statements that he "shouldn't be wearing his letterman jacket" because he was no longer on the team.

32.     Staff members were aware of this conduct but failed to intervene. Only after a teacher, Mr. Menlove, became aware of the situation did the harassment subside. This further demonstrates the hostile environment tolerated by school administrators.

PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND - 8

33. Information from other schools further supports concerns about Defendant Lee's conduct. Blair High School reportedly filed or considered filing a formal complaint against Monrovia for overly aggressive and unsportsmanlike behavior. Coaches from other schools expressed disapproval of Defendant Lee's conduct to parent-coach Krista Luiten.

34. Information from other schools further illustrates the broader concerns surrounding Defendant Lee's conduct and the environment within the Monrovia High School boys' water polo program. Upon information and belief, coaches from opposing schools expressed disapproval of Defendant Lee's behavior to parent-coach Krista Luiten, noting patterns of overly aggressive play, unsportsmanlike conduct, and poor sideline management. Blair High School reportedly filed or considered filing a formal complaint against Monrovia High School after competitions in which Defendant Lee's teams displayed conduct inconsistent with CIF expectations and the District's own standards for competitive athletics.

35. These concerns are consistent with the team's performance data. According to MaxPreps, the Monrovia boys' water polo team has experienced significant underperformance over multiple seasons, including records of 2–12 (2024–25), 1–14 (2023–24), 4–11 (2022–23), and 5–18 (2021–22). This sustained pattern of losses undermines any claim that demotions, exclusions, or leadership decisions were merit-based. Instead, the data support the inference that arbitrary decision-making, favoritism, and retaliation, not athletic performance, drove team dynamics and placement decisions.

36. Despite the team's consistent underperformance, Defendant Lee continued to make arbitrary placement decisions that did not align with player skill, experience, or prior leadership roles. These decisions contributed to confusion, anxiety, and frustration among athletes and undermined the integrity of the program.

PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND - 9

37.    The District's own Annual Parent Information & Notifications Handbook establishes numerous mandatory duties that apply directly to the circumstances described here. These include requirements to maintain safe athletic environments, prevent bullying, hazing, and harassment, enforce the Comprehensive School Safety Plan, provide mental-health support, ensure proper supervision of students, maintain transparent communication with parents, enforce student fee and fundraising rules, respond to complaints under the Uniform Complaint Procedure, and ensure equitable treatment in extracurricular activities. These policies reflect the District's acknowledgment that extracurricular programs must be operated safely, fairly, and with appropriate oversight.

38.    Upon information and belief, the District failed to enforce these mandatory duties. Despite receiving repeated notice of concerns from multiple parents, including detailed written complaints describing favoritism, intimidation, exclusion, unsafe supervision practices, and emotional distress among student-athletes, the District took no meaningful action to investigate or correct the issues.

39.    Administrators failed to intervene, failed to enforce safety protocols, and failed to ensure compliance with required communication and complaint-handling procedures. This administrative inaction allowed the hostile environment to persist and contributed directly to the retaliatory conduct experienced by J.K. and other athletes.

40.    The District's failure to enforce its own policies - including those governing student safety, bullying prevention, mental-health support, communication with parents, and complaint procedures - reflects deliberate indifference to the rights and well-being of student-athletes. Upon information and belief, administrators were aware that Defendant Lee's

PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND - 10

conduct violated multiple District policies but chose not to intervene, thereby ratifying the misconduct.

41.    As a result of Defendants' conduct, J.K. suffered significant emotional distress, anxiety, reputational harm, and the loss of educational and athletic opportunities. The hostile environment, combined with the District's deliberate indifference and failure to enforce its own policies, caused lasting harm to J.K.'s well-being and undermined his ability to participate safely and fairly in the water polo program.

42.    As a result of the hostile environment, J.K. experienced significant emotional distress, including anxiety, loss of sleep, withdrawal from social and athletic activities, and fear of further retaliation. His academic performance and overall well-being were negatively impacted, and he ultimately felt compelled to leave a program he had devoted years to.

## COUNT ONE
### RETALIATION IN VIOLATION OF THE FIRST AMENDMENT
### (42 U.S.C. § 1983)

43.    Plaintiffs hereby repeat all of the allegations contained in the Complaint thus far above and incorporate the same as if fully set forth at length herein.

44.    This cause of action is brought pursuant to 42 U.S.C. § 1983 for violations of the First Amendment to the United States Constitution. At all relevant times, Defendants acted under color of state law.

45.    Plaintiffs Justin and Mercedes Killen engaged in protected speech when they submitted complaints to Monrovia High School administrators, including Principal Ayala, regarding unsafe conditions, discriminatory treatment, violations of District policy, and retaliatory conduct within the boys' water polo program. These complaints addressed matters of

PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND - 11

public concern, including student safety, bullying, hazing, mental-health risks, misuse of authority, and violations of District-mandated policies.

46.     Plaintiff J.K. also engaged in protected speech when he communicated concerns about unfair treatment, unsafe conditions, and retaliatory conduct to school officials and when he associated with his parents' protected advocacy.

47.     Following Plaintiffs' protected speech, Defendants took adverse actions against J.K., including but not limited to:

      a.   demoting J.K. from varsity to junior varsity without explanation;

      b.   removing J.K. from team communications;

      c.   excluding J.K. from team events and activities;

      d.   denying J.K. leadership opportunities he had previously earned;

      e.   marginalizing J.K. within the team environment; and

      f.   subjecting J.K. to intimidation and hostility from favored players.

48.     These adverse actions would deter a person of ordinary firmness from continuing to engage in protected speech.

49.     The adverse actions occurred shortly after Plaintiffs' complaints, establishing a strong temporal connection between the protected speech and the retaliation. Within days of raising concerns, J.K. was removed from team communications, excluded from events, and stripped of leadership roles.

50.     Defendants' retaliatory motive is further demonstrated by:

      a.   the abrupt change in J.K.'s treatment following the complaints;

      b.   the pattern of retaliation against other athletes whose parents raised concerns;

      c.   the undue influence exercised by favored parents;

PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND - 12

    d.   the District's failure to investigate or intervene despite repeated notice; and

    e.   the continuation of hostility even after J.K. left the team.

51.    These facts support a reasonable inference that Plaintiffs' protected speech was a substantial or motivating factor in Defendants' adverse actions.

52.    Defendant Monrovia Unified School District is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), because the retaliation occurred pursuant to:

    a.   a custom and practice of ignoring parent complaints and failing to investigate misconduct;

    b.   a policy of inadequate supervision and oversight of athletic programs;

    c.   deliberate indifference to violations of District-mandated safety, communication, and complaint-handling policies;

    d.   ratification of Defendant Lee's conduct by Principal Ayala and other administrators who knew of the misconduct and failed to intervene; and

    e.   a failure to train staff regarding retaliation, student safety, complaint procedures, and parent communication requirements.

53.    The District's Annual Parent Information & Notifications Handbook establishes mandatory duties regarding student safety, bullying prevention, mental-health support, supervision, communication with parents, and complaint procedures. Upon information and belief, the District failed to enforce these duties, allowing retaliation and unsafe conditions to persist.

54.    The District's deliberate indifference and ratification were a moving force behind the constitutional violations suffered by Plaintiffs.

PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND - 13

55.     As a direct and proximate result of Defendants' retaliatory conduct, J.K. experienced profound emotional and psychological harm. He developed significant anxiety and distress, withdrew from activities he once enjoyed, and lived in persistent fear of further retaliation. His reputation among peers was damaged, his educational and athletic opportunities were diminished, and the hostile environment ultimately forced him to abandon a program to which he had devoted years of effort. Plaintiffs suffered these and other damages according to proof.

56.     Plaintiffs seek compensatory damages, punitive damages against the individual defendants, attorneys' fees and costs under 42 U.S.C. § 1988, and all other relief the Court deems just and proper.

## COUNT TWO
### VIOLATION OF THE EQUAL PROTECTION CLAUSE
### (42 U.S.C. § 1983)

57.     Plaintiffs hereby repeat all of the allegations contained in the Complaint thus far above and incorporate the same as if fully set forth at length herein.

58.     This cause of action is brought pursuant to 42 U.S.C. § 1983 for violations of the Equal Protection Clause of the Fourteenth Amendment. At all relevant times, Defendants acted under color of state law.

59.     Defendants intentionally treated J.K. differently from other similarly situated student-athletes without any legitimate or rational basis. Despite J.K.'s prior varsity status, leadership experience, and demonstrated commitment to the program, Defendant Lee demoted him, excluded him from team communications and events, and denied him recognition and leadership opportunities.

PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND - 14

60.	In contrast, favored athletes, including those whose parents exercised undue influence over Defendant Lee, received preferential treatment, consistent recognition, and leadership roles regardless of merit, performance, or adherence to team expectations.

61.	The disparate treatment was not based on athletic performance, skill level, safety considerations, or any legitimate coaching rationale. Team performance data further demonstrates that placement decisions were arbitrary, inconsistent, and unrelated to merit.

62.	Defendants selectively enforced team rules, expectations, and placement decisions in a manner that favored certain athletes and disfavored others. Favored athletes were shielded from accountability, granted leadership roles, and protected from consequences, while disfavored athletes, including J.K., were subjected to demotions, exclusion, intimidation, and retaliation.

63.	The written complaint submitted by parent Martha Aguila corroborates this pattern of favoritism, selective enforcement, intimidation, and exclusion. Additional players reported similar treatment and expressed fear of retaliation if they or their parents raised concerns.

64.	The parent group chat incident further demonstrates arbitrary favoritism and unequal treatment. When Plaintiff Justin Killen asked why prior student recognitions had been removed from the team's social media page, parent Sarah Edgington immediately responded and attempted to justify the removal without explaining why only her son's recognition remained. This incident reflects the undue influence certain parents exercised over team operations and the exclusion of others from meaningful participation.

PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND - 15

65.	Defendants' disparate treatment of J.K. was not rationally related to any legitimate governmental or educational interest. Instead, it was motivated by favoritism, personal relationships, retaliation for protected speech, and hostility toward parents who raised concerns.

66.	The arbitrary and inconsistent treatment of J.K. violated the Equal Protection Clause because similarly situated athletes were treated more favorably without any lawful justification.

67.	Defendant Monrovia Unified School District is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), because the unequal treatment occurred pursuant to:

a.	a custom and practice of allowing favoritism, selective enforcement, and undue parental influence within athletic programs;

b.	a policy of inadequate supervision and oversight of coaching staff;

c.	deliberate indifference to violations of District-mandated policies requiring equitable treatment in extracurricular activities;

d.	ratification of Defendant Lee's conduct by Principal Ayala and other administrators who knew of the misconduct and failed to intervene; and

e.	a failure to train staff regarding equal treatment, nondiscrimination, and complaint-handling procedures.

68.	The District's Annual Parent Information & Notifications Handbook establishes mandatory duties requiring equitable treatment of students in extracurricular activities. Upon information and belief, the District failed to enforce these duties, allowing favoritism and selective enforcement to persist.

PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND - 16

69.     The District's deliberate indifference and ratification were a moving force behind the constitutional violations suffered by Plaintiffs.

70.     As a direct and proximate result of Defendants' unequal treatment, J.K. suffered emotional distress, reputational harm, loss of educational and athletic opportunities, withdrawal from activities he once enjoyed, and fear of further retaliation. Plaintiffs suffered these and other damages according to proof.

71.     Plaintiffs seek compensatory damages, punitive damages against the individual defendants, attorneys' fees and costs under 42 U.S.C. § 1988, and all other relief the Court deems just and proper.

### COUNT THREE
### MUNICIPAL LIABILITY – MONELL
### (42 U.S.C. § 1983)

72.     Plaintiffs hereby repeat all of the allegations contained in the Complaint thus far above and incorporate the same as if fully set forth at length herein.

73.     This cause of action is brought pursuant to 42 U.S.C. § 1983 against Defendant Monrovia Unified School District ("District") for constitutional violations arising from the District's policies, customs, practices, failures to train, and ratification of misconduct. At all relevant times, the District acted under color of state law.

74.     The constitutional violations suffered by Plaintiffs were caused by the District's longstanding custom and practice of ignoring parent complaints, failing to investigate misconduct, permitting arbitrary favoritism within athletic programs, and allowing coaches to operate without meaningful oversight or accountability.

75.    Upon information and belief, the District maintained a custom of inadequate supervision of athletic staff, including Defendant Lee, by failing to monitor compliance with safety protocols, communication requirements, complaint procedures, and equitable treatment standards mandated by District policy.

76.    The District further maintained a custom of deliberate indifference to violations of its own mandatory policies, including those governing student safety, bullying prevention, hazing, mental-health support, supervision of minors, transportation safety, communication with parents, and complaint-handling procedures.

77.    The District failed to adequately train its employees, including coaches, administrators, and supervisory personnel, regarding:

      a.    retaliation and First Amendment protections;

      b.    equal treatment and nondiscrimination in extracurricular activities;

      c.    mandatory safety protocols for aquatic programs and student transportation;

      d.    communication requirements with parents and guardians; and

      e.    proper handling, documentation, and investigation of complaints.

78.    This failure to train amounted to deliberate indifference because the need for such training was obvious, and the lack of training foreseeably resulted in constitutional violations, unsafe conditions, and retaliatory conduct.

79.    Principal Ayala and other District administrators had actual notice of Defendant Lee's misconduct, including unsafe supervision practices, discriminatory treatment, retaliation, intimidation, and violations of District policy. Despite repeated complaints from multiple parents, administrators failed to investigate, discipline, or correct the misconduct.

PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND - 18

80.    By failing to act, administrators ratified Defendant Lee's conduct, communicated approval of his actions, and signaled that retaliation, favoritism, and unsafe practices would be tolerated within the boys' water polo program.

81.    Ratification by District officials constitutes official policy under Monell because the decision not to investigate or intervene was made by individuals with final policymaking authority over athletic programs and student safety.

82.    The District's deliberate indifference is further demonstrated by its failure to enforce the mandatory duties set forth in the Annual Parent Information & Notifications Handbook, including requirements to:

      a.   maintain safe athletic environments;

      b.   prevent bullying, hazing, and harassment;

      c.   enforce the Comprehensive School Safety Plan;

      d.   provide mental-health support;

      e.   ensure proper supervision of students;

      f.   maintain transparent communication with parents;

      g.   enforce student fee and fundraising rules;

      h.   respond to complaints under the Uniform Complaint Procedure; and

      i.   ensure equitable treatment in extracurricular activities.

83.    Upon information and belief, the District routinely disregarded these mandatory duties, allowing unsafe conditions, intimidation, favoritism, and retaliation to persist unchecked.

84.    The District's policies, customs, practices, failures to train, and ratification were the moving force behind the constitutional violations suffered by Plaintiffs, including retaliation for protected speech and unequal treatment in violation of the First and Fourteenth Amendments.

PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND - 19

85.    As a direct and proximate result of the District's conduct, Plaintiffs suffered emotional distress, reputational harm, loss of educational and athletic opportunities, withdrawal from activities, and other damages according to proof.

86.    Plaintiffs seek compensatory damages, attorneys' fees and costs under 42 U.S.C. § 1988, and all other relief the Court deems just and proper.

## COUNT FOUR
## NEGLIGENCE

87.    Plaintiffs hereby repeat all of the allegations contained in the Complaint thus far above and incorporate the same as if fully set forth at length herein.

88.    Defendants owed J.K. a duty of reasonable care, including duties to maintain a safe athletic environment, properly supervise students, enforce District-mandated safety protocols, prevent bullying and intimidation, communicate transparently with parents, and respond appropriately to complaints regarding student welfare.

89.    Defendants breached these duties by failing to supervise Defendant Lee, failing to enforce mandatory safety protocols, permitting unsafe aquatic practices without a lifeguard present, allowing unauthorized transportation of minors in personal vehicles, ignoring repeated complaints from multiple parents, and permitting a hostile and retaliatory environment to persist within the boys' water polo program.

90.    Defendants further breached their duties by failing to investigate reports of misconduct, failing to intervene when students were intimidated or retaliated against, failing to enforce equitable treatment in extracurricular activities, and failing to ensure compliance with the District's Annual Parent Information & Notifications Handbook.

PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND - 20

91.    The District's administrators, including Principal Ayala, had actual notice of unsafe conditions, discriminatory treatment, intimidation, and retaliation, yet failed to take corrective action. This failure to act constituted negligence and demonstrated disregard for the safety and well-being of student-athletes.

92.    As a direct and proximate result of Defendants' negligence, J.K. suffered emotional distress, anxiety, reputational harm, withdrawal from activities he once enjoyed, diminished educational and athletic opportunities, and other damages according to proof.

93.    Plaintiffs seek compensatory damages and all other relief the Court deems just and proper.

## COUNT FIVE
## NEGLIGENT SUPERVISION AND NEGLIGENT TRAINING

94.    Plaintiffs hereby repeat all of the allegations contained in the Complaint thus far above and incorporate the same as if fully set forth at length herein.

95.    Defendants Monrovia Unified School District and Principal Ayala owed a duty to reasonably supervise, train, and monitor employees, including Defendant Jeff Lee, to ensure compliance with District-mandated safety protocols, communication requirements, complaint-handling procedures, and standards governing equitable treatment of students in extracurricular activities.

96.    The District further owed a duty to ensure that coaching staff were properly trained in student supervision, aquatic-safety requirements, transportation safety, anti-bullying and anti-hazing policies, mental-health awareness, and nondiscriminatory administration of athletic programs.

PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND - 21

97.    Defendants breached these duties by failing to adequately supervise Defendant Lee, failing to monitor his compliance with mandatory safety protocols, failing to ensure he adhered to communication requirements with parents, and failing to intervene despite repeated notice of unsafe conditions, discriminatory treatment, intimidation, and retaliatory conduct.

98.    Defendants also breached their duties by failing to provide adequate training regarding:

      a.   proper supervision of minors during athletic activities;

      b.   mandatory aquatic-safety protocols, including lifeguard requirements;

      c.   transportation and passenger-safety rules;

      d.   complaint-handling procedures and mandatory reporting obligations;

      e.   retaliation and First Amendment protections; and

      f.   equitable treatment and nondiscrimination in extracurricular programs.

99.    The District's failure to supervise and train Defendant Lee created foreseeable risks of harm, including unsafe supervision, discriminatory treatment, intimidation, retaliation, and emotional distress among student-athletes.

100.    Upon information and belief, the District had actual notice of Defendant Lee's misconduct and the risks posed by his conduct, yet failed to take corrective action, discipline him, or provide additional training. This failure to act constituted negligent supervision and negligent training.

101.    As a direct and proximate result of Defendants' negligent supervision and negligent training, J.K. suffered emotional distress, anxiety, reputational harm, withdrawal from activities he once enjoyed, diminished educational and athletic opportunities, and other damages according to proof.

PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND - 22

102. Plaintiffs seek compensatory damages and all other relief the Court deems just and proper.

## COUNT SIX
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

103. Plaintiffs hereby repeat all of the allegations contained in the Complaint thus far above and incorporate the same as if fully set forth at length herein.

104. Defendants' conduct toward J.K. was extreme, outrageous, and beyond the bounds of decency tolerated in a civilized society. Defendants abused their positions of authority over a minor student-athlete, engaged in retaliatory and discriminatory treatment, ignored mandatory safety protocols, and permitted a hostile environment marked by intimidation, exclusion, and fear.

105. Defendant Lee intentionally subjected J.K. to humiliating and degrading treatment, including unexplained demotions, exclusion from team communications and events, denial of earned leadership opportunities, and intimidation by favored players. These actions were taken knowingly and deliberately, with the intent to punish J.K. and his family for protected complaints.

106. Defendants further acted outrageously by allowing unsafe conditions to persist, including unsupervised aquatic activity without a lifeguard, unauthorized transportation of minors in personal vehicles, and refusal to communicate with parents despite mandatory District requirements. Administrators, including Principal Ayala, had actual notice of these conditions and intentionally chose not to intervene.

107. Defendants' conduct created an environment in which J.K. reasonably feared further retaliation, experienced anxiety and distress, withdrew from activities he once enjoyed,

PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND - 23

and ultimately felt compelled to leave a program he had devoted years to. The continuation of hostility even after J.K. left the team further demonstrates the intentional nature of Defendants' conduct.

108.    Defendants acted with intent to cause emotional distress or with reckless disregard of the probability that their conduct would cause severe emotional harm to J.K. Their actions were malicious, oppressive, and undertaken with conscious disregard for J.K.'s well-being.

109.    As a direct and proximate result of Defendants' intentional and outrageous conduct, J.K. suffered severe emotional distress, including anxiety, loss of sleep, withdrawal from social and athletic activities, reputational harm, and diminished educational and athletic opportunities. Plaintiffs suffered these and other damages according to proof.

110.    Plaintiffs seek compensatory damages, punitive damages against the individual defendants, and all other relief the Court deems just and proper.

## GOVERNMENT CLAIMS ACT COMPLIANCE PARAGRAPH

111.    Plaintiffs have complied with all requirements of the California Government Claims Act. Plaintiffs timely submitted a written claim to Monrovia Unified School District pursuant to Government Code §§ 905, 910, and 911.2. The District rejected the claim, and this action is timely filed within the statutory period following rejection. Plaintiffs have therefore satisfied all prerequisites to maintaining state-law causes of action against the District and its employees.

PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND - 24

## **PRAYER**

112.    **WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment in their favor and against all Defendants, and award the following relief:

a.   Compensatory damages in an amount to be determined according to proof at trial but in excess of $75,000.00;

b.   General damages for emotional distress, anxiety, reputational harm, and loss of educational and athletic opportunities;

c.   Punitive damages against the individual defendants for their malicious, oppressive, and reckless conduct;

d.   Issue injunctive relief requiring appropriate policies and training for staff;

e.   Declare Defendants' actions in violation of state and federal constitutional rights;

f.   Attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and applicable state law;

g.   Pre-judgment and post-judgment interest as permitted by law; and

h.   Such other and further relief as the Court deems just and proper.

Dated this July 13, 2026

_____/s/ Lynda Sangmor_____
Lynda Sangmor (Pro Hac Vice)
**LENTO LAW GROUP, P.C.**
Phoenix Corporate Tower
3003 N Central Avenue, Suite 685

PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND - 25

Phoenix, AZ 85012
Telephone: (480) 745-5863
Facsimile: (856) 375-1010
Email: lynda.sangmor@llgnational.com

*Attorney for Plaintiffs*

PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND - 26